## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ROBB A. CRAWFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:23-cv-00123-JDL** |
| | ) | |
| **CITY OF WESTBROOK et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

Robb A. Crawford, a former employee of the City of Westbrook, filed a Complaint initiating this action on March 9, 2023 (ECF No. 1), in response to the termination of his employment.  The Complaint names as Defendants the City of Westbrook (the "City") and three individuals affiliated with the City: Michael Foley, Jerre Bryant, and Gregory Post (collectively, the "Individual Defendants").  The Complaint asserts several federal and state claims: breach of contract (Count I); sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II); sex discrimination in violation of the Maine Human Rights Act (Count III); violation of the Maine Whistleblowers' Protection Act (Count IV); violation of the equal protection guarantees under the Maine and United States Constitutions (Count V); and violation of the due process guarantees under the Maine and United States Constitutions (Count VI).

The Defendants filed a Partial Motion to Dismiss on July 18, 2023 (ECF No. 10).  The motion seeks dismissal of all counts in the Complaint against the Individual

1

Defendants; and Counts II, III, V, and VI against the City.  For the reasons that follow, I grant the motion and decline to exercise supplemental jurisdiction over the remaining state law claims.  As a result, the Complaint is dismissed in its entirety.

## I. FACTUAL BACKGROUND

The following well-pleaded, nonconclusory facts are derived from the Plaintiff's Complaint, and I accept them as true for the purpose of deciding the Defendants' Partial Motion to Dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Plaintiff Robb A. Crawford started working for the City of Westbrook in April 2016, and his position was eliminated in 2020 because of pandemic-related restructuring.  In keeping with a collective bargaining agreement, an employee with a lower seniority level was "bumped" from her position as an Office Coordinator so that Crawford could assume that role.  ECF No. 1 at 2, ¶ 12.  The City terminated the former Office Coordinator's employment on May 22, 2020, and Crawford took over that role on May 26, 2020.  Defendant Gregory Post became Crawford's direct supervisor.

Crawford's work with Post "was fraught from the beginning."  ECF No. 1 at 3, ¶ 19.  Crawford noticed that Post would print and file emails that he sent to Crawford, which Post did not do for other employees.  Post also entered Crawford's office while Crawford was gone, rearranged items on his desk, and then took photos of the space.  Crawford had never been warned or disciplined in the four years before the position transfer.  But Post issued write-ups to Crawford on two occasions when Crawford attended to the health needs of family members—both times with Post's permission.

Crawford learned from other City employees that Post had a very close relationship with the former Office Coordinator and that the two had been upset and

2

crying when they learned that she would be laid off.  Crawford "believes, based on reports made to him and other information he has obtained and observed," that Post and the former employee had been involved in a romantic or sexual relationship with each other.  ECF No. 1 at 3, ¶ 8.  Post frequently communicated with the former employee, and he would attempt to hide his phone from Crawford when he received text messages from her.  Despite Post's efforts, Crawford saw some of the messages from the former employee to Post, including one that appeared flirtatious and another that read: "Well hopefully it will change back soon."  ECF No. 1 at 4, ¶ 25.  Crawford reasoned that Post and the former employee wanted to revert to their prior arrangement, where Post supervised the former employee—a woman—instead of Crawford—a man.  Given this context, Crawford believed that "Post was attempting to manufacture a justification for terminating [Crawford's] employment so that he could bring back [the former employee] and resume his romantic or sexual relationship with her."  ECF No. 1 at 3, ¶ 21.

Crawford received a letter from Defendant Michael Foley on March 9, 2021, that terminated his employment with the City.  The letter provided no explanation as to the reason or reasons for Crawford's termination.  There was a grievance hearing about Crawford's termination that Defendant Foley ended early when Crawford presented evidence about his positive work performance.  Post was also present at the grievance hearing, which made Crawford feel intimidated and unable to freely describe the problems he experienced at work.  Crawford filed a complaint with the Maine Human Rights Commission and Equal Employment Opportunity

Commission and contends that he has exhausted his administrative remedies.  He subsequently brought this civil action.

## II.  LEGAL STANDARD

To evaluate a motion to dismiss under Rule 12(b)(6), the Court must treat "[n]on-conclusory factual allegations in the complaint" as true and then consider whether "that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'" such that "the claim has facial plausibility." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (2009)).  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [a court] 'to draw on' [its] 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

## III.  DISCUSSION

### A.   Status of Individual Defendants

The Individual Defendants argue that the Court should dismiss Counts II, III, and IV against them because there is no individual liability under Title VII, the Maine Human Rights Act, or the Maine Whistleblowers' Protection Act.  The Individual Defendants also argue that the Court should dismiss Count I against them because they are not parties to the contract implicated in this dispute.  Crawford concedes that Counts I through IV do not apply to the Individual Defendants and agreed at oral argument that those claims should be dismissed as applied to them.

4

Accordingly, the claims made in Counts I, II, III, and IV of the Complaint are dismissed as to Defendants Foley, Bryant, and Post.

## B.    Sex Discrimination and Equal Protection Claims

Count II of the Complaint asserts a claim for sex discrimination under Title VII; Count III asserts a claim for sex discrimination under the Maine Human Rights Act; and Count V asserts a claim under the equal protection guarantees of the federal and Maine constitutions.  The crux of Crawford's argument in each of these counts is that the City discriminated against him or treated him differently because of his sex.

Title VII makes it unlawful for certain employers "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e-2(a)(1) (West 2024).  Similarly, the Maine Human Rights Act makes it unlawful for an employer "to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment" because of sex.  5 M.R.S.A. § 4572(1)(A) (West 2024).  The Maine Human Rights Act and Title VII are similar in terms of their "text and purpose," and federal and state courts "have looked to federal case law addressing Title VII [when] evaluating claims arising under the [Maine Human Rights Act]."  *Briggs v. City of Portland*, No. 2:16-cv-00374-JDL, 2017 WL 1745377, at *11 (D. Me. May 4, 2017) (rec. dec.), *aff'd*, 2017 WL 2265059 (D. Me. May 23, 2017).

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105-06 (1st Cir. 2015). Likewise, the Maine Constitution provides that "[n]o person shall . . . be denied the equal protection of the laws." Me. Const. art. I, § 6-A; *see also Anderson v. Town of Durham*, 2006 ME 39, ¶ 28, 895 A.2d 944 (explaining that "Article 1, section 6-A of the Maine Constitution includes similar requirements" as the Equal Protection Clause of the Fourteenth Amendment).

To state a claim for sex discrimination under Title VII or the Maine Human Rights Act, Crawford "must plausibly allege that [he] experienced an adverse employment action taken on the basis of [his] gender." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (applying Title VII). For example, a plaintiff can state a plausible disparate treatment claim by pleading facts demonstrating that he was treated differently than others who were similarly situated, and "that gender was the reason for that difference." *Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020) ("[A]n employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII."). The same is true as to an equal protection claim: "Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, the plaintiff was selectively treated . . . based on impermissible considerations . . . .'" *Mulero-Carrillo*, 790 F.3d

at 106 (alteration and internal quotation marks omitted) (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).

Here, the Complaint squarely asserts that Crawford was terminated because his direct supervisor "did not want a man working for him because he desired to have a woman with whom he could have a romantic or sexual relationship in Plaintiff's position." ECF No. 1 at 8-9, ¶¶ 61, 68. For reasons I will explain, this assertion, when considered in conjunction with other facts pleaded in the Complaint, does not allege that Crawford's termination or treatment at work was because of his sex.

The allegations in the Complaint, viewed in the light most favorable to Crawford, would establish that his supervisor preferred the former employee—a woman—for Crawford's position, and that Crawford is a man. But those facts alone do not state a facially plausible claim that Crawford's work experience or firing were because of his gender. "To ward off dismissal, 'the plaintiff need not demonstrate that [he] is likely to prevail, but [his] claim must suggest more than a sheer possibility that a defendant has acted unlawfully.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 527-28 (1st Cir. 2023) (internal quotation marks omitted) (quoting *García-Catalán v. United States*, 734 F.3d 100, 102-03 (1st Cir. 2013)).

Here, the Complaint alleges facts which, when viewed in the most favorable light, could establish that Crawford was treated poorly and eventually terminated because Post desired to maintain a close, romantic relationship with a particular former female employee with whom he had a preexisting relationship. However, those allegations do not expressly establish or support a reasonable inference that "gender was the reason" that Crawford was treated differently than a similarly

situated woman.   Indeed, the Complaint alleges that Post was motivated to fire Crawford "so that he could bring back [the particular former employee] and resume his romantic or sexual relationship *with her*."   ECF No. 1 at 3, ¶ 21 (emphasis added). Rather than supporting a reasonable inference that Crawford was fired because of his sex, the Complaint—which I read as a whole, *see García-Catalán*, 734 F.3d at 103—instead alleges that Post preferred a particular person over Crawford.   The Complaint does not plausibly allege that Post's preference or the adverse employment action that flowed from it were "because of" Crawford's sex.   *See DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986) ("Appellees were not prejudiced because of their status as males; rather, they were discriminated against because [an administrator] preferred his paramour."). Accordingly, Crawford's sex discrimination and equal protection claims—Counts II, III, and V of the Complaint— are dismissed.

## C.    Procedural Due Process Claim

Count VI of the Complaint asserts a violation of Crawford's right to procedural due process, due to having been "fired without notice as to the cause and without an adequate opportunity to be heard."   ECF No. 1 at 12, ¶ 89.   The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   The Maine Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law."   Me. Const. art. I, § 6-A.   "The Maine and United States Constitutions create coextensive due process rights."   *Doe I v. Williams*, 2013 ME 24, ¶ 61, 61 A.3d 718.

"To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011) (alteration in original) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)); *accord Doe I*, 2013 ME 24, ¶ 61, 61 A.3d 718 ("We review a procedural due process claim in two steps.  First, we determine if the government has deprived a claimant of life, liberty, or property interests.  Second, if such deprivation occurred, we then determine what process, pursuant to the Fourteenth Amendment, is due . . . ." (quoting *DaimlerChrysler Corp. v. Me. Revenue Servs.*, 2007 ME 62, ¶ 26, 922 A.2d 465)).  Crawford contends that the City deprived him of a constitutionally protected property interest in continued public employment.  The City counters that even if Crawford has pleaded a sufficient property interest, his procedural due process claim must fail because Maine state law provides an adequate post-deprivation remedy.

"'[W]hen the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself,' such conduct is considered 'random and unauthorized,' and the procedural due process claim is 'limited to the issue of the adequacy of the post[-]deprivation remedies provided by the state.'" *Farris v. Poore*, 841 F. Supp. 2d 436, 439-40 (D. Me. 2012) (quoting *Hadfield v. McDonough*, 407 F.3d 11, 19-20 (1st Cir. 2005)).  Here, Crawford has not alleged "a flaw in the state law itself," *Hadfield*, 407 F.3d at 20, and the facts in the Complaint instead focus on the individualized conduct of City officials.  Thus, Crawford "cannot succeed on his procedural due process claim unless he can show that the state failed to provide him

9

with an adequate post[-]deprivation remedy." *Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1st Cir. 1996).

The City argues that Maine Rule of Civil Procedure 80B provides an adequate post-deprivation remedy here.  Rule 80B provides the applicable procedure "[w]hen review by the Superior Court, whether by appeal or otherwise, of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law."  Me. R. Civ. P. 80B(a).  "Rule 80B is designed 'to afford prompt, effective, expeditious and direct judicial review of administrative action.'"  *Tominsky v. Ogunquit*, 2023 ME 30, ¶ 19, 294 A.3d 142 (quoting *Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982)).  Crawford contends, however, that "Rule 80B is either not available to [him] at all or cannot provide an adequate remedy for the wrongs he has suffered."  ECF No. 17 at 4.  Specifically, Crawford argues that Rule 80B does not provide an adequate remedy because (1) Rule 80B cannot remedy the fact that Crawford was denied a hearing before he was discharged; and (2) Crawford cannot seek review under Rule 80B because the City never communicated its reasoning for his termination.

As to the first point, Crawford cites *Gorham v. Androscoggin County*, 2011 ME 63, 21 A.3d 115, for the proposition that he was deprived of due process "prior to any final action" and "such deprivations cannot be adequately remedied by the Rule 80B process."  ECF No. 17 at 4.  In *Gorham*, the plaintiff filed a civil complaint in the Superior Court after he was discharged from his position as a county corrections officer.  *Gorham*, 2011 ME 63, ¶¶ 1, 5, 21 A.3d 115.  The plaintiff asserted due process and wrongful termination claims, alleging in part that the County Sheriff suspended

10

the plaintiff without pay, and that the County Commissioners subsequently dismissed him.  *Id.* at ¶¶ 4-5.  The plaintiff "argue[d] that review of the Commissioners' action [could not] redress his independent claim that the Sheriff deprived him of a property interest without due process by suspending him without pay before the Commissioners conducted a hearing."  *Id.* at ¶ 21.  The Law Court reasoned that it could not, on the record before it, "conclude that direct review pursuant to Rule 80B would provide an adequate remedy" for the plaintiff's due process claim.  *Id.* at ¶ 25.

In *Gorham*, the plaintiff complained about two distinct official acts: (1) the Sheriff's decision to suspend him without pay, and (2) the Commissioners' decision to dismiss him.  The Law Court could not conclude on the record before it whether review of the Commissioners' decision pursuant to Rule 80B would also address the plaintiff's earlier suspension by the Sheriff.  *See id.* at ¶¶ 24-25.  In contrast, Crawford's procedural due process claim here centers only on the process he received in relation to his termination.  Crawford alleges that he was not afforded applicable procedural protections before his dismissal, but his Complaint does not allege a distinct pre-termination deprivation analogous to that at issue in *Gorham*.  The facts here do not involve a situation where "an alleged deprivation of civil rights occurs before, and not as a part of, the action or inaction for which a plaintiff seeks review." *Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 16, 148 A.3d 707.  Thus, this aspect of the *Gorham* decision does not support the conclusion that Rule 80B is a constitutionally inadequate remedy in Crawford's case.

As to his second argument, Crawford alleges that he received written notice of his termination on March 9, 2021, but the notice failed to state the reason or reasons for his termination. It follows, Crawford argues, that the notice did not provide him "the information necessary to bring an 80B appeal."[1] ECF No. 17 at 5. Crawford again cites *Gorham* in support of his argument.

In *Gorham*, the Law Court noted that the Maine Freedom of Access Act, 1 M.R.S.A. § 407(2) (West 2024), required the County Commissioners to issue a written decision explaining the basis for their decision.[2] *Gorham*, 2011 ME 63, ¶ 17, 21 A.3d 115. Based on this, the Law Court concluded "that, for purposes of Rule 80B(b), 'notice of any action' involving the dismissal of a county employee . . . occurs when the employee receives a copy of the written decision of the county commissioners or personnel board required by [the Maine Freedom of Access Act]." *Id.* at ¶ 19 (quoting Me. R. Civ. P. 80B(b)). But the City's failure to issue written findings—beyond the bare bones termination letter Crawford received—does not

---

[1] Crawford argues in his Response to the Partial Motion to Dismiss (ECF No. 17) that the absence of findings prevents him from bringing a Rule 80B action, but he does not otherwise suggest that Rule 80B is unavailable to him. I note that Crawford's Complaint "makes no allegation that the state remedies available to him are constitutionally inadequate." *Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020). "A procedural due process claim that does not 'allege the unavailability of constitutionally-adequate remedies under state law' fails." *Id.* (quoting *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992)).

[2] The Maine Freedom of Access Act provides in relevant part:

**Dismissal or refusal to renew contract.** Every agency shall make a written record of every decision involving the dismissal or the refusal to renew the contract of any public official, employee or appointee. The agency shall, except in case of probationary employees, set forth in the record the reason or reasons for its decision and make findings of fact, in writing, sufficient to apprise the individual concerned and any interested member of the public of the basis for the decision. A written record or a copy thereof must be kept by the agency and made available to any interested member of the public who may wish to review it.

1 M.R.S.A. § 407(2).

render Rule 80B a constitutionally inadequate remedy. Indeed, the Law Court has construed Rule 80B as the proper mechanism to address the failure of a government agency to issue written findings required by the Maine Freedom of Access Act:

> Presumably in the instant case there was no record [as required by the Maine Freedom of Access Act]. However, had plaintiff availed himself of the relief provided by Rule 80B, he could have compelled the preparation of a record, including a new hearing if necessary, as he might have under the now abolished process of mandamus. Once the requirement of a record was enforced, Rule 80B would also have provided the mechanism for judicial review of the decision and the procedure employed in reaching that decision since it has subsumed the extraordinary writ of certiorari. The court would then have been appropriately situated to scrutinize the record for error, and if error were found the court could reverse, vacate, or modify the decision accordingly. In short, plaintiff's entire request for relief could have been adequately remedied through the process of direct review.

*Colby*, 442 A.2d at 548 (citation omitted). Further, Rule 80B explicitly contemplates review of a governmental agency's "action *or failure or refusal to act*" when review is available by law. Me. R. Civ. P. 80B(a) (emphasis added). In addition, for the purpose of calculating "[t]he time within which review may be sought" absent a statutory time limit, the Rule differentiates between "notice of any action or refusal to act" (within thirty days after notice) and "a failure to act" (within six months after the time in which action should reasonably have occurred).[3] Me. R. Civ. P. 80B(b).

Based on the foregoing, I determine that Rule 80B constitutes an adequate post-deprivation remedy for the injuries Crawford claims to have suffered. Indeed, this Court has previously concluded that Rule 80B constitutes a constitutionally

---

[3] The parties have not briefed—and I do not address—the correct manner or timeframe for Crawford to raise his concerns in a Rule 80B action.

adequate remedy in the context of the dismissal of public employees,[4] and Crawford has not plausibly alleged that Maine state law does not afford him a constitutionally adequate remedy here. Because state law provides an adequate post-deprivation remedy for the "random and unauthorized" conduct that Crawford alleges, Crawford's procedural due process claim fails.

## D.   Supplemental Jurisdiction

Federal jurisdiction in this case is based on the Complaint's assertion of federal claims. *See* 28 U.S.C.A. §§ 1331, 1343 (West 2024). Because I conclude that the federal claims should be dismissed, I decline to exercise supplemental jurisdiction over the remaining state law claims. A federal district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3) (West 2024). Ordinarily in circumstances where "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 37 (1st Cir. 2020) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). This is because, "in the

---

[4] *See, e.g.*, *Learnard v. Inhabitants of Town of Van Buren*, 182 F. Supp. 2d 115, 117, 121, 125-26 (D. Me. 2002) (concluding that Rule 80B provided adequate post-deprivation remedy where former municipal employee alleged that town officials violated his procedural due process rights "when they terminated his employment without first giving him notice of the reasons for his termination and an opportunity to respond"); *Farris*, 841 F. Supp. 2d at 438, 441 (concluding that "[t]he Maine Rule 80B process is an adequate post[-]deprivation remedy in this case" involving former town code enforcement officer and granting motion to dismiss procedural due process claims); *Young v. Town of Bar Harbor*, No. 1:14-cv-00146-GZS, 2015 WL 2337868, at *1, *6 (D. Me. Apr. 23, 2015) (rec. dec.) (concluding that Rule 80B constituted adequate post-deprivation remedy where former chief of police "complain[ed] about the execution of the process" that town used to terminate his employment), *aff'd*, 2015 WL 2337442 (D. Me. May 13, 2015).

usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (quoting *Carnegie-Mellon*, 484 U.S. at 350 n.7).  I conclude that these factors "point toward declining" to exercise supplemental jurisdiction over the state law claims here.  Thus, the remaining claims in the Complaint are dismissed without prejudice.

## IV.  CONCLUSION

It is therefore **ORDERED** that the Defendants' Partial Motion to Dismiss (ECF No. 10) is **GRANTED**.  All Counts are **DISMISSED** with prejudice as against Defendants Foley, Bryant, and Post; and Counts II, III, V, and VI are **DISMISSED** with prejudice as against the City.  Because the Court declines to exercise supplemental jurisdiction over the remaining state law claims against the City, it is further **ORDERED** that the remaining claims are **DISMISSED** without prejudice. As a result, all claims in the Complaint have been dismissed and this action is **TERMINATED**.


**SO ORDERED.**

**Dated:  April 24, 2024**


_____
        **/s/ JON D. LEVY**
      **U.S. DISTRICT JUDGE**